## WILLHOIT v. PRAIRIE OIL & GAS CO. et al.

No. 24459.     Oct. 31, 1933.

Leo J. Williams and M. J. Parmenter, for petitioner.

J. Berry King, Atty. Gen., for State Industrial Commission.

BUSBY, J. The claimant, Everett Willhoit, received an accidental injury on December 22, 1930, while in the employ of the Prairie Oil & Gas Company. He received compensation for temporary total disability from December 22, 1930, to the first day of January 1932, at the rate of $18 per week, or a total sum of $1,026. His employer, believing he had recovered from his injury and was able to return to work, filed motion to discontinue compensation, and claimant thereupon filed a motion requesting the Commission to determine the extent of permanent disability. Upon a hearing the Commission determined that claimant's temporary total disability ceased February 1, 1932. The Commission further found that claimant did and does have a permanent partial disability, which disability decreased his wage-earning capacity, and fixed his compensation at the rate of $8 per week, not to exceed 300 weeks, and further subject

to a reconsideration by the Commission upon the motion of any party at interest. The award was based upon a finding that claimant's earning capacity had decreased from $5 to $3 per day, and that the difference between claimant's average daily wages at the time of his accidental injury and his earning capacity thereafter is $2 per day. The award of $8 per week for 300 weeks was based upon a recovery of 66 2/3 per centum of the difference between claimant's average weekly wages at the date of said accidental injury and his wage-earning capacity thereafter in the same employment, or otherwise, during the continuance of said impairment, not to exceed 300 weeks. The Commission further ordered that respondent's motion to discontinue compensation for temporary total disability should be sustained.

The Commission further ordered that a sum of not to exceed $120, as reasonable attorneys' fees, be paid by the respondent to the claimant's attorney, and that out of this sum claimant's attorney pay the witness fee of the doctor who testified for him in this cause.

The petitioner and claimant urges three assignments of error. First, that the Industrial Commission erred in not awarding the claimant compensation for a permanent partial disability to his left foot. There is conflicting evidence on this point. The well established decisions of this court hold that if there is any competent evidence to sustain the award, this court will affirm it. Two doctors testified that claimant had sustained no permanent disability. The Commission's finding, therefore, on this point is sustained by ample competent testimony.

Second, claimant urges that the Industrial Commission erred in finding that the claimant is capable of earning $3 per day, and fixing his rate of compensation at the rate of $8 per week. After an examination of the evidence we are of the opinion that the Commission's finding that claimant had any disability whatever was more favorable to the claimant than the evidence justified. This man has already been paid a total compensation in the sum of $1,026. His former employer, Prairie Oil & Gas Company, several times offered him employment which he refused. The district superintendent of the company offered him a job at any kind of work he was able to do. After being pressed by his former employers to go to work, the claimant himself consulted a doctor with reference to returning to work, and was advised that there was no physical disability in his left

leg whatsoever; that it was "in excellent weight bearing condition," and that it was "more powerful than it was before it was broken." There is ample evidence in the record to show that claimant had entirely recovered from his disability; that he was able to return to work; that on different occasions he arbitrarily refused to work. Therefore, we find that the award of the Industrial Commission of compensation of $8 per week for 300 weeks was very liberal and should be sustained.

Third, claimant contends further that the Industrial Commission erred in ordering claimant's attorney to pay the witness fee of the doctor who testified in claimant's behalf. We regard this contention as serious. Attorneys are permitted to practice before the State Industrial Commission. Their fees must be approved by the Commission before they become a lien upon the the compensation awarded. Attorneys should be accorded the same fair consideration in fixing the amount of their fees for appearing and conducting litigation before that body as they usually receive before any other tribunal, considering the amount of legal work done and the amount of money involved. The question of the reasonableness of the fee is a discretionary matter with the Commission, and unless this discretion is abused the award should be upheld by this court. For the Commission, however, to direct that a lawyer pay a portion or all of the expense of a client's litigation is highly improper, and that portion of such order is void. It would not be sound policy to permit the Commission to order the mingling of attorney's fees and medical fees. It might lead to the encouraging of litigation, collusion, framing of evidence, and might tend to make a medical witness feel that his remuneration in the case would depend upon the result of the Commission's decision. Followed to its logical conclusion, such orders on the part of the Commission would tend to sanction, encourage, and ratify practices which ethical lawyers are not allowed to pursue. The Commission might be placed in the anomalous position of saying to the bar, in effect, that one scale of fees will be allowed where the lawyer himself furnishes the witnesses and another scale of fees where the client furnishes them. Such procedure on the part of the Commission would be in direct conflict with the law enacted in Oklahoma creating a Board of Governors, advisory councils, and disciplinary committees of the State Bar, and in vesting in them the power to adopt rules for the

guidance of lawyers. Rule 44, relative to expenses of litigation, provides:

"A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience but subject to reimbursement."

Rule 36, relative to division of fees, provides:

"No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility. But the established custom of sharing commissions at a commonly accepted rate, upon collections of commercial claims between forwarder and receiver, though one be a lawyer and the other not (being a compensation for valuable services rendered by each), is not condemned hereby where it is not prohibited by statute."

Rule 9, relative to disbarment, suspension, or other disciplinary actions, provides:

"That he has divided or agreed to divide fees for legal services with anyone other than another attorney entitled to practice law, and if the fee is earned or received in a cause pending in court, then only with an attorney of record therein. Provided, that this provision shall not apply to the sharing of commissions at a commonly accepted rate, upon collections of commercial claims between forwarder and receiver, though one be a lawyer and the other not."

In view of the foregoing rules relative to regulations on the part of the State Bar and our view of professional ethics, we cannot place our stamp of approval upon an order of the Industrial Commission allowing an attorney a certain sum for his legal services, "out of which sum claimant pay the witness fee of the doctor who testified for the claimant at the hearing in this case."

Therefore, that portion of the award of the Industrial Commission directing payment of the witness fees out of the attorney's fees is hereby declared void. The award as to all other provisions will be affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BAYLESS, JJ., concur. WELCH, J., absent.